**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 13 CR 660 |
| | ) | |
| ADRIANA GALLARDO (FLORES), | ) | |
| and ANGEL AGUILAR | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

The government moves to narrow the court's oral ruling entered on May 14, 2014 suppressing statements made by the Defendant Adriana Gallardo Flores ("Flores"). For the reasons set forth below, the Court[1] grants the government's motion.

## BACKGROUND

On August 15, 2013, the grand jury returned a nine-count indictment against Flores and Angel Aguilar ("Aguilar") alleging money laundering and structuring offenses under 18 U.S.C. § 1956 and 31 U.S.C. § 5324 (R. 1, Indictment.) The government arrested Flores on May 29, 2013, pursuant to a criminal complaint. (R. 36-2, Criminal Comp.) The issue before the court first arose on March 14, 2014 when Flores filed a motion to suppress statements she made following her arrest. (R. 32, Mot. to Supp.)

In support of her motion to suppress, Flores submitted a sworn affidavit alleging, in part, the following. During Flores's arrest, a Chicago police officer slammed her against her car and

---

[1] This case was originally assigned to the Hon. John F. Grady, who heard the motion to suppress and made the May 14, 2014 ruling. This case was reassigned to this Court on August 8, 2014. (R. 47.) Accordingly, this opinion uses the uncapitalized "court" when referring to arguments presented to or decisions made by Judge Grady, and the capitalized "Court" when referring to arguments presented to or decisions made by this Court.

1

handcuffed her, leaving her with bruises on her body. (R. 32-1, Flores Aff. ¶ 8.) He also called her a "stupid bitch" and was very disrespectful to her. (*Id*. ¶ 11.) She immediately told him that she wanted an attorney. (*Id*. ¶ 14.) Another officer taunted Flores "about how the women in the MCC were going to have a good time" with her, and Flores told him that she wanted a lawyer. (*Id*. ¶ 17.) The original officer transported Flores to the DEA office downtown. (*Id*. ¶ 20.) Once there, she was met by IRS Agent William Desmond and CPD Sergeant George Karuntzos. (*Id*. ¶ 22.) She asked them why she was there, and they told her she was under arrest for money laundering. (*Id*. ¶ 23.) She told them that she wanted a lawyer. (*Id*. ¶ 24.) Desmond showed her pictures of her son, and told her to cooperate or her son would be indicted. (*Id*. ¶ 25.) She told them that she wanted a lawyer again. (*Id*. ¶ 26.) After further statements from Desmond regarding her son and the benefits of her cooperation, Flores signed a written *Miranda* waiver. (*Id*. ¶ 27-29.)

Flores then spoke with the officers for over four hours, giving a detailed statement incriminating herself. (R. 36, Resp. to Mot. to Supp., at 13.); (5/13/2014 Tr. 149.) In her motion, Flores sought to suppress this statement based on the government's procurement of her statements through physical and psychological intimidation in violation of the Fifth Amendment, and her repeated invocation of the right to counsel and the failure of the agents to inform her of her *Miranda* rights before beginning a custodial interrogation. (R. 32, Mot. to Supp., at 16.)

In its response, the government disputed nearly all of Flores's contentions. (R. 36, Resp. to Mot. to Supp.) It asserted that the arresting officer did not slam Flores against her car during her arrest, and at no point did any of the arresting agents call her a "stupid bitch" or tell her that the female inmates at the MCC would harass her. (*Id*. at 12-13.) According to the government, Flores never invoked her right to an attorney, either at the scene of the arrest or at the DEA office

downtown. (*Id*. at 27-28.) The government also argued that if Flores did invoke her right to an attorney at the scene of the arrest, Flores re-initiated contact with the agents at the DEA office by asking them "why she was there." (*Id*. at 29.) The government argued further that the agents' statements to Flores regarding the charges against her before they advised her of her *Miranda* rights did not constitute a custodial interrogation. (*Id*. at 17-19.) Any custodial interrogation only began after Flores validly waived her *Miranda* rights both orally and by signing a written waiver. (*Id*. at 17-19.) Finally, the government argued that Flores's post-arrest statements were not obtained by physical or psychological force or coercion. (*Id*. at 20-26.)

The court held a hearing on the motion to suppress over two days beginning on May 13, 2014. After hearing testimony from a number of witnesses, including Flores and both Agent Desmond and Sergeant Karuntzos, the court suppressed Flores's post-arrest statements. Specifically, the court found that: 1) Flores invoked her right to counsel at the scene of the arrest; (R. 40, 5/14/2014 Tr. 52-53) 2) Flores invoked her right to counsel again at the DEA office to Agent Desmond and Sergeant Karuntzos; (*Id*. 53-54) and 3) Agent Desmond and Sergeant Karuntzos's conversation with Flores before Flores waived her *Miranda* rights constituted a custodial interrogation because it was intended to induce Flores to waive her *Miranda* rights and make incriminating admissions in response. (*Id*. 54-56; 65.) Accordingly, the court found Flores's *Miranda* waiver invalid, and noted that Agent Desmond and Sergeant Karuntzos's denials that Flores invoked her right to an attorney at the DEA office were false. (*Id*. 54.) Based on these findings, the court suppressed Flores's statements made in the DEA interview room.[2]

---

[2] The court also suppressed evidence found by law enforcement on Flores's cell phone and during a later search of her office and residence. (*See* R. 65-66.) As the parties do not seek reconsideration of that ruling, the Court does not disturb it here.

The government brings this motion to narrow the scope of the court's ruling granting Flores's motion to suppress. It does not seek to overturn Judge Grady's decision to suppress Flores's statement and the evidence derived from it. Instead, the government seeks to narrow the scope of the order to exclude any grounds for the decision other than the ruling that Flores invoked her right to counsel at the scene of the arrest. It argues that once the court found that Flores invoked her right to counsel at that point, it was unnecessary for the court to reach any further issues because as a matter of law any further interrogation would be barred unless Flores herself re-initiated communications with law enforcement.

Finally, the government emphasizes that its motion is not one for reconsideration because it is not seeking to overturn the court's decision or to admit the evidence that Judge Grady suppressed. The Court, however, will treat the motion as one for reconsideration, albeit with the understanding that the government is seeking to narrow the grounds for the court's decision rather than overturn it entirely.

## LEGAL STANDARD

Motions to reconsider are not explicitly provided for in the Federal Rules of Criminal Procedure, but courts have found that they exist as a matter of general practice. *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) (citing *United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964)); *see also United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014) (in criminal cases, "reconsideration motion are accepted as a common-law practice"). "[A] motion to reconsider in a criminal prosecution is proper and may be entertained if it is filed in time." *United States v. Beard*, 745 F.3d 288, 291 (7th Cir. 2014) (citing *Rollins*, 607 F.3d at 504).

Motions for reconsideration, however, are not entertained lightly. "A district court may reconsider a prior decision when there has been a significant change in the law or facts since the

parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (holding that a motion for reconsideration performs a valuable function where the court has patently misunderstood a party, has made a decision outside the adversarial issues presented, or has made an error not of reasoning but of apprehension)). Whether to grant reconsideration "is left to the discretion of the district court." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996).

**ANALYSIS**

In its motion, the government essentially argues that the Court should narrow its decision to the adversarial issues presented to the court. The government argues that once the court found that Flores invoked her right to counsel at the scene of the arrest, the court did not need to make any further rulings, including whether Flores invoked her right to counsel at the DEA office, or whether the agents' conversation with Flores constituted a custodial interrogation. Once the court made its initial finding that Flores invoked her right to counsel, Flores's statements would necessarily be suppressed and any further rulings were unnecessary. In her response, Flores argues that the court's findings regarding the credibility of Agent Desmond and Sergeant Karuntzos were a crucial component of its decision, and that the "law of the case" doctrine prevents this Court from overturning the findings of Judge Grady.[3] For the reasons explained below, the Court largely agrees with the government.

---

[3] Defendant Aguilar also filed a response, in which he makes substantially similar arguments to Flores. (*See* R. 50.) Accordingly, the Court only references Flores's arguments.

## I. Flores Invoked Her Right to Counsel at the Scene of the Arrest

The Fifth Amendment provides that "no person shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. To protect this privilege against self-incrimination, the Supreme Court held in *Miranda v. Arizona* that "a suspect must be informed of, and voluntarily waive" his Fifth Amendment rights, including the right to counsel, "before being subjected to custodial interrogation." *United States v. Robinson,* 586 F.3d 540, 545 (7th Cir. 2009) (citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)); *see also United States Pelletier,* 700 F.3d 1109, 1114 (7th Cir. 2012) ("*Miranda v. Arizona* requires police to read a series of warnings to suspects before putting them through custodial interrogation.").

The Supreme Court's decision in *Edwards v. Arizona* governs a defendant's invocation of the right to counsel. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards*, the police arrested the defendant, and informed him of his *Miranda* rights. *Id*. at 479. After waiving his rights and submitting to questioning, the defendant invoked his right to counsel and the police ceased contact with him. *Id*. The next morning, two new detectives came to speak with the defendant, and after again informing him of his *Miranda* rights, the defendant proceeded to implicate himself in a crime. *Id*. The Court held that under these circumstances the defendant had not validly waived his *Miranda* rights. Once the defendant invoked his right to counsel, he was "not subject to further interrogation by the authorities until counsel ha[d] been made available to him, unless [he] initiate[d] further communication, exchanges, or conversations with the police." *Id*. at 484-485. The Supreme Court held that a valid waiver of the right to counsel "cannot be established by showing only that [the defendant] responded to

6

further police-initiated custodial interrogation even if he has been advised of his rights." *Id*. at 484.

In *Oregon v. Bradshaw*, the Supreme Court further addressed the issue of whether a defendant, after first invoking his right to counsel, can later waive his right to counsel by re-initiating communications with the police. *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 3830, 77 L.Ed.2d 405 (1983). In *Bradshaw*, the defendant invoked his right to counsel. *Id*. at 1041-1042. Later, while in the process of being transferred from the police station to jail, he asked a police officer, "Well, what is going to happen to me now?" *Id*. at 1042. The Supreme Court found that under *Edwards*, the defendant had initiated further communications with the police. *Id*. at 1044-1045. In so holding, the Court established that whether a defendant has re-initiated communications with law enforcement and waived his right to counsel is a two-step process. *See id*. at 1045-1046. First, "[a] suspect initiates conversation if he makes a statement that 'evince[s] a willingness and a desire for a generalized discussion about the investigation.'" *Robinson*, 586 F.3d at 545 (quoting *Bradshaw*, 462 U.S. at 1046). The second step is "whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Bradshaw*, 462 U.S. at 1046 (quoting *Edwards*, 451 U.S. at 486).

Here, the court found that Flores had invoked her right to counsel at the scene of the arrest. Specifically, it found it "almost impossible to believe that the defendant did not say at the scene of the arrest that she wanted a lawyer," and that "she did say that she wanted a lawyer." (R. 40, 5/14/2014 Tr. 52.) Accordingly, Flores was not subject to further interrogation by the officers unless Flores re-initiated contact with the police and waived her *Miranda* rights.

7

Without re-initiation of contact by Flores, any custodial interrogation was invalid, even if Flores later waived her *Miranda* rights after being advised of them by Agent Desmond and Sergeant Karuntzos. The government agreed with this proposition at the suppression hearing, stating "that if [Flores] would have asked for an attorney, and that was true, and had not reinitiated communication, then we would not have been able to talk to her." (R. 40, 5/14/2014 Tr. 28.)

## II. Flores Did Not Re-Initiate Communications with the Government

The government argued at the hearing, however, that Flores re-initiated communications with the agents at the DEA office. In her affidavit submitted in support of her motion to suppress, Flores stated that upon arriving at the DEA office, Flores asked the officers "why [she] was there." (R. 32-1, Flores Aff. ¶ 23.) The government argued that in so doing Flores re-initiated contact with law enforcement, and that Flores then proceeded to validly waive her *Miranda* rights. While the district court did not specifically address this issue in its ruling, the Court has no difficulty finding that the government did not meet its burden to show that Flores had re-initiated contact with the agents.[4] Once a defendant invokes her right to counsel, the government must show by a preponderance of the evidence that the defendant re-initiated communications with law enforcement. *See Edwards*, 451 U.S. at 484 (holding that once a defendant invokes his right to counsel, the showing of waiver must include that the defendant initiated further communication with the police); *United States v. Stewart*, 536 F.3d 714, 719 (7th Cir. 2008) (noting that the government bears the burden of demonstrating the admissibility of a confession, including proving the defendant's *Miranda* waiver by a preponderance of the evidence); *Moore v. Berghuis*, 700 F.3d 882, 888-89 (6th Cir. 2012) (finding that the government

---

[4] During closing arguments at the hearing, the court asked counsel for the government about this issue and counsel referenced the statement in Flores's affidavit to support the government's argument that Flores re-initiated contact. (R. 40, 5/14/2014 Tr. 28-31.) With the benefit of the transcript, it is clear that Flores's testimony differed from the statement in her affidavit.

8

did not show by a preponderance of the evidence that the defendant initiated further conversation with law enforcement after invoking his right to counsel).

In reviewing the transcript of the hearing, it is clear that the government did not establish that Flores reinitiated contact with the agents. Flores gave opposite accounts in her sworn affidavit in support of her motion to suppress and during her testimony at the hearing. In her affidavit, Flores stated that upon arriving at the DEA office, "I asked why I was there, and they told me I was under arrest for money laundering." (R. 32-1, Flores Aff. ¶ 23.) In her testimony at the hearing, however, she was asked the following questions and gave the following responses:

> Q: And what happened after they came in the room?
>
> A: They identified themselves, told me who they were, and that point they – he started –
>
> Q: Who is he?
>
> A: *Desmond asked me, do you know why you're here?* And I said to him, I said, because I have a warrant – because I was told that there was a warrant for my arrest, a federal – a warrant for my arrest. *And he said, do you know for what?*

(5/13/2014 Tr. 239-40.) (emphasis added).

Flores stated that it was Agent Desmond, not Flores, who initiated the conversation regarding Flores's arrest when she first arrived at the DEA office. This statement contradicted the testimony in her affidavit that she resumed contact with the agents by asking why she was at the DEA office. Despite this ambiguity, the government never cross-examined Flores on this point at the hearing. Further, although Agent Desmond and Officer Karuntzos both testified at length, neither of them was asked who initiated communications once Flores arrived at the DEA office. Thus, the government did not show by a preponderance of the evidence that Flores re-initiated communications with the agents.

9

The Court agrees with the government that given the determination that Flores invoked her right to counsel at the scene of the arrest and did not re-initiate communication with law enforcement, the court did not need to go further and reach any additional possible bases for suppression—namely, whether Flores again invoked her right to an attorney at the DEA office, or whether the agents' communications with Flores at the DEA office before advising her of her Miranda rights constituted a custodial interrogation. The court did not need to resolve these issues in order to suppress Flores's statements, and Flores's arguments to the contrary in her response are not persuasive.[5] Once a defendant invokes her right to counsel, she is "not subject to further interrogation by the authorities until counsel has been made available to [her], unless [she] initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-485.

### III. Law of the Case Doctrine

Finally, Flores argues that because Judge Grady's credibility findings were a crucial component of the Court's ruling to suppress Flores's statements, the "law of the case" doctrine and principles of judicial economy weigh in favor of the Court denying the government's motion. Flores notes that the law of the case doctrine is especially important where more than one district court judge presides over the case, and cites a Seventh Circuit case for the proposition that in such situations, "the law of the case doctrine…reflects the rightful expectation of litigants that a change of judges mid-way through a case will not mean going back to square one." *Best v. Shell Oil*, 107 F.3d 544, 546 (7th Cir. 1997).

---

[5] Flores also argues in her response that this Court should not revisit Judge Grady's credibility determinations regarding Agent Desmond and Sergeant Karuntzos. The Court notes that in reaching its ruling it does not re-examine those credibility determinations—instead, it finds that the court did not need to make them in order to resolve the motion to suppress, and narrows the scope of the ruling to exclude them.

"Under the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation." *U.S. v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008). The law of the case doctrine, however, is "no more than a presumption, one whose strength varies with the circumstances." *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (quoting *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995)). "A judge may reexamine his earlier ruling (or the ruling of a judge previously assigned to the case…) if [s]he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefited from it." *Avitia*, 49 F.3d at 1227.

There are a number of circumstances here that weigh in favor of the law of the case doctrine not applying. First, and perhaps most importantly, the government's motion does not seek to send the litigants back to "square one." Unlike in *Best*, where a second judge overturned the original judge's denial of summary judgment for the defendant, resulting in "complete defeat" for the plaintiff, the government's motion here would not overturn the court's prior order. *Best*, 107 F.3d at 546-547. The evidence suppressed by Judge Grady will remain suppressed. Accordingly, if the Court grants the government's motion it will not cause the defendants any prejudice whatsoever, let alone "undue harm." Second, in *Galvan* the Seventh Circuit found that reconsideration of a prior judge's order was proper where a "new development" occurred. *Galvan*, 678 F.3d at 587-88. Here, as discussed above, the transcript from the suppression hearing shows that Flores did not testify that she re-initiated communications with law enforcement at the DEA office. (*See* 5/13/2014 Tr. 239-40.) The parties (and the court) do not appear to have realized this before the oral ruling at the hearing.[6] Finally, *Galvan* emphasized that the law of the case doctrine applies with less force when the court's prior order is

---

[6] *See* note 4, *supra*.

interlocutory, which the suppression order is here. *See Galvan*, 678 F.3d at 587. Therefore, the law of the case doctrine does not block the Court's reconsideration of the grounds for the prior ruling.

Based on the Court's inherent authority to reconsider its rulings, the Court limits the original ruling to the finding that Flores invoked her right to counsel at the scene of the arrest, and, consequently, Flores's statements remain suppressed. The rest of the judge's ruling was unnecessary to this determination. Furthermore, the Court again notes that Defendant will not suffer any prejudice from this ruling because the evidence suppressed by Judge Grady remains suppressed.

Accordingly, the Court amends its May 14, 2014 Orders (R. 38 and R. 39.) as follows:

The Court finds that the defendant's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) were violated by the interview that was conducted at the DEA office on May 29, 2013. The Court finds that the defendant validly invoked her right to counsel at the scene of the arrest. As a result, the government's custodial interrogation of her at the DEA office violated that right. Accordingly, all statements made by the defendant in the interview at the DEA office, as well as any evidence obtained in the subsequent searches of the defendant's office, residence, and cell phone are suppressed. Any other findings contained in the Court's May 14, 2014 oral ruling [40] are stricken.

## CONCLUSION

For the foregoing reasons, the Court grants the government's motion to narrow the court's oral ruling of May 14, 2014. That ruling shall be modified in accordance with this Order. Defendant Flores's post-arrest statements and the evidence derived from her post-arrest statements remain suppressed.

DATED: October 21, 2014          ENTERED

_____
AMY J. ST. EVE
U.S. District Court Judge

13