**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.            )<br>)<br>ADRIANA GALLARDO (FLORES), )<br>ANGEL AGUILAR         ) | Case No. 13 CR 660 |

## **MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Adriana Gallardo Flores's ("Flores") motion for reconsideration of the Court's October 21, 2014 order narrowing the basis for the grant of Flores's motion to suppress. For the following reasons, the Court denies Defendant's motion.

## **BACKGROUND**

On August 15, 2013, the grand jury returned a nine-count indictment against Aguilar and Defendant Adriana Gallardo Flores ("Flores") alleging money laundering and structuring offenses under 18 U.S.C. § 1956 and 31 U.S.C. § 5324 (R. 1, Indictment.) The government arrested Flores on May 29, 2013, pursuant to a criminal complaint. (R. 36-2, Criminal Compl.) Flores made statements to the government following her arrest, and filed a motion to suppress those statements on March 14, 2014.

As discussed in detail in the Court's October 21, 2014 Memorandum Opinion and Order (R. 56, the "October 2014 Opinion"), the court held a hearing on Flores's motion to suppress over two days beginning on May 13, 2014.[1] After hearing testimony from a number of

---

[1] This case was originally assigned to the Hon. John F. Grady, who heard Flores's motion to suppress and ruled on May 14, 2014. This case was reassigned to this Court on August 8, 2014. (R. 47.) Accordingly, this opinion uses the uncapitalized "court" when referring to arguments presented to or decisions made by Judge Grady, and the capitalized "Court" when referring to arguments presented to or decisions made by this Court.

1

witnesses, including Flores, the court suppressed Flores's post-arrest statements. Specifically, the court found that: 1) Flores invoked her right to counsel at the scene of the arrest; (R. 40, 5/14/2014 Tr. 52-53) 2) Flores invoked her right to counsel again after the government brought her to the DEA offices; (*Id*. 53-54) and 3) the conversation the law enforcement officers had with Flores at the DEA offices before Flores waived her *Miranda* rights constituted a custodial interrogation because it was intended to induce Flores to waive her rights and make incriminating admissions in response. (*Id*. 54-56; 65.) The court also suppressed evidence found by law enforcement on Flores's cell phone and during a subsequent search of her office and residence as "fruit of the poisonous tree" derived from Flores's suppressed statements. (*Id*. 65-66.)

On August 6, 2014, the government filed a motion to narrow the court's May 14, 2014 suppression ruling (the "May 2014 Ruling"). (R. 45.) As detailed in the Court's October 2014 Opinion, the Court granted the government's motion. The Court found that once Flores invoked her right to counsel at the scene of her arrest and did not re-initiate communication with law enforcement, the court did not need to reach any additional possible bases for suppression. Accordingly, the Court struck the other findings from the May 2014 Ruling, including that IRS Agent William Desmond and CPD Sergeant George Karuntzos were untruthful in their testimony at the hearing. The Court ordered that Flores's post-arrest statements in the interview at the DEA office, and any evidence obtained in the subsequent searches of Flores's office, residence, and cell phone remain suppressed.

Flores now moves for reconsideration of the Court's October 21, 2014 decision.

## LEGAL STANDARD

Motions to reconsider are not explicitly provided for in the Federal Rules of Criminal Procedure, but courts have found that they exist as a matter of general practice. *United States v.*

*Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) (citing *United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964)); *see also United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014) (in criminal cases, "reconsideration motions are accepted as a common-law practice"). "[A] motion to reconsider in a criminal prosecution is proper and may be entertained if it is filed in time." *United States v. Beard*, 745 F.3d 288, 291 (7th Cir. 2014) (citing *Rollins*, 607 F.3d at 504).

Motions for reconsideration, however, are not entertained lightly. "A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (holding that a motion for reconsideration performs a valuable function where the court has patently misunderstood a party, has made a decision outside the adversarial issues presented, or has made an error not of reasoning but of apprehension)). Whether to grant reconsideration "is left to the discretion of the district court." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996).

## ANALYSIS

In her motion, Flores makes two main arguments. First, she contends that the Court's October 2014 ruling conflicts with binding Seventh Circuit precedent on the "law of the case" doctrine. Second, Flores argues that in making its October 2014 decision, the Court did not fully evaluate the prejudice that it would cause her. The Court will address each of these arguments in turn.

**I.     Law of the Case Doctrine**

Flores first argues that the Court's October 2014 ruling conflicts with the "law of the case" doctrine. Specifically, Flores contends that the successor judge in a transferred case should not disrupt the findings of the original judge. "Under the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation." *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008). The law of the case doctrine, however, is "no more than a presumption, one whose strength varies with the circumstances." *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (quoting *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995)). "A judge may reexamine his earlier ruling (or the ruling of a judge previously assigned to the case…) if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefited from it." *Avitia*, 49 F.3d at 1227.

Flores cites *Williams v. C.I.R.* for the proposition that a successor judge should not disrupt the original judge's prior rulings based on a "different view of the law or facts." *Williams v. C.I.R.*, 1 F.3d 502, 503 (7th Cir. 1993). In *Williams*, which involved a dispute between two taxpayers and the government, the original Tax Court judge granted partial summary judgment in favor of the taxpayers. *Id*. The case was later reassigned to a successor judge, who found in favor of the government on a different basis. *Id*. at 503-04. On appeal, the Seventh Circuit held that the law of the case doctrine did not apply under these circumstances because the two rulings were "not inconsistent." *Id*. at 504. In explaining the law of the case doctrine as it applies to where the judge changes in the middle of the case, the court stated that, "[l]itigants have a right to expect that a change in judges will not mean going back to square one. The second judge may alter previous rulings if new information convinces him that they are

incorrect, but he is not free to do so…merely because he has a different view of the law or facts from the first judge." *Id*. at 503.

Here, as the Court found in the October 2014 Opinion, the Court is not sending Flores back to "square one." The evidence that the court originally suppressed remains suppressed—that holding did not change. As the government notes, there has also been no effect on the procedural posture of the case, and the trial remains set for March 9, 2015.

Second, here there is also "new information." *Williams*, 1 F.3d at 503; *see also Galvan*, 678 F.3d at 587-88 (finding that reconsideration of a prior judge's order was proper where a "new development" occurred). As the Court explained in the October 2014 Opinion, the transcript from the suppression hearing makes clear that the government did not establish that Flores reinitiated contact with law enforcement. This information was not apparent to the parties and the court when the court issued its original ruling immediately following the hearing.[2] Flores gave opposite accounts in her sworn affidavit in support of her motion to suppress and during her testimony. In her affidavit, Flores stated that upon arriving at the DEA office, "I asked why I was there, and they told me I was under arrest for money laundering." (R. 32-1, Flores Aff. ¶ 23.) In her testimony at the hearing, however, she was asked the following questions and gave the following responses:

> Q: And what happened after they came in the room?
>
> A: They identified themselves, told me who they were, and that point they – he started –
>
> Q: Who is he?

---

[2] During closing arguments at the suppression hearing, for example, the court asked counsel for the government about this issue and counsel referenced the statement in Flores's affidavit to support the government's argument that Flores re-initiated contact. (R. 40, 5/14/2014 Tr. 28-31.) With the benefit of the transcript, it is clear that Flores's testimony differed from the statement in her affidavit.

5

> A: *Desmond asked me, do you know why you're here*? And I said to him, I said, because I have a warrant – because I was told that there was a warrant for my arrest, a federal – a warrant for my arrest. *And he said, do you know for what*?

(5/13/2014 Tr. 239-40.) (emphasis added). Further, the government never cross-examined Flores on this point at the hearing, and although Agent Desmond and Sergeant Karuntzos both testified at length, no one asked them who had initiated communications once Flores arrived at the DEA office. Accordingly, the Court found based on this "new development" that the government had not shown by a preponderance of the evidence that Flores had re-initiated communications with the agents.

Flores also argues that the Court should not have re-examined Judge Grady's credibility findings regarding Agent Desmond and Sergeant Karuntzos, in part because those findings were integral to the court's determination that Flores's testimony at the suppression hearing was credible. The Court disagrees. First, the court found Flores credible based on her own testimony. As the government notes, the court stated at the hearing:

> I find the defendant to be a credible witness, and this is surprising in view of what we know about her criminal background and her deep involvement in the nefarious trafficking of large amounts of cocaine. But there were numerous opportunities she had on the witness stand yesterday, both on direct and cross-examination, to embellish her story, to make it a better story than it is.

(R. 40, 5/14/2014 Tr. 56.)

Second, the Court did not re-examine Judge Grady's credibility determinations regarding Agent Desmond and Sergeant Karuntzos. As Flores states in her motion, "[t]his Court did not discuss whether it agreed with Judge Grady's credibility determinations." (R. 58, Flores Mot., at 3.) The Court found based on Flores's testimony alone that she invoked her right to counsel at the scene of her arrest, and that she did not re-initiate communication with the law enforcement officers. Given that finding, the Court ruled that Judge Grady did not need to make any

6

determinations regarding the testimony of Agent Desmond and Sergeant Karuntzos to resolve the motion to suppress. Flores's testimony on its own was enough for the suppression finding. Accordingly, this Court did not re-examine the original credibility determinations of Agent Desmond and Sergeant Karuntzos—it narrowed the ruling to exclude them.

In summary, as the Court found in the October 2014 Opinion, the law of the case doctrine does not preclude this Court from narrowing the grounds for the court's original suppression ruling.

## II. Prejudice to Flores

Flores next argues that the Court did not fully evaluate the prejudice that its October 2014 decision would cause her. In Flores's motion, she makes two main points in support of this argument. First, she argues that it forecloses her from using significant impeachment evidence. Second, Flores contends that it prevents her from arguing to the jury that the testimony of Agent Desmond and Sergeant Karuntzos was "part of the government's systematic and continuous efforts to set up a deceptive investigation and prosecution." (R. 58, Flores Mot., at 4.) Then in her reply, Flores for the first time also argues that the October 2014 ruling would bar her from re-litigating the issue of whether Agent Desmond and Sergeant Karuntzos testified truthfully at her suppression hearing in a future civil action. The Court examines each argument.

With respect to the impeachment issue, the government has represented that it does not intend to call either Agent Desmond or Sergeant Karuntzos as a witness at trial. (R. 53, at 7; R. 62, at 14.) Accordingly, their credibility will not be at issue for Flores to impeach. Although in her motion Flores does not specify how she would like to use the impeachment evidence at trial, the Court notes that the law forecloses Flores from calling either of the law enforcement officers as a witness at trial for the sole purpose of impeachment. Indeed, "a party may not call a witness

7

for the sole purpose of impeaching him." *United States v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011) (quoting *United States v. Giles*, 246 F.3d 966, 974 (7th Cir. 2001)).

Next, Flores contends that the Court's decision has prevented her from presenting evidence that the testimony of the officers was part of the government's efforts "to set up a deceptive investigation and prosecution." Other than using this evidence for impeachment purposes, however, inquiry into the mental states of investigating officers and prosecutors is generally irrelevant to determining a defendant's guilt or innocence. *See United States v. Goulding,* 26 F.3d 656, 667 (7th Cir. 1994) (district court did not abuse discretion in refusing to allow the defendant to "mount an inquiry into the mental states of investigating officers since such evidence was irrelevant"); *see also United States v. Letourneau,* No. 11 CR 182, 2013 WL 3834410, at *2 (N.D. Ill. July 24, 2013) (precluding evidence or argument relating to the government's "motivation in prosecuting the case."). Flores also may not introduce evidence designed to induce jury nullification. *See United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012) (affirming decision of district court to exclude evidence where it would "invite the jury to acquit even if the government satisfied each element of the charged offense.")

Finally, Flores argues for the first time in her reply that the October 2014 decision bars her from re-litigating the issue of whether Agent Desmond and Sergeant Karuntzos testified truthfully at her suppression hearing in a future civil action based on the doctrine of collateral estoppel. "[A]rguments raised for the first time in a reply brief are waived." *Darif v. Holder*, 739 F.3d 329, 336-37 (7th Cir. 2014). That applies with even more force here where Flores failed to raise this issue not only in her motion for reconsideration, but also in her response to the government's initial motion to narrow. Accordingly, the Court treats this argument as waived.[3]

---

[3] The Court also notes that the case upon which Flores relies for this argument, *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), is inapplicable to the facts here. In *McCurry*, the trial court in the underlying

For these reasons, the Court declines to reconsider its October 2014 ruling based on the alleged prejudice that it causes Flores.[4] Flores does not provide any basis for why that decision causes her prejudice, let alone "undue harm." *See Avitia*, 49 F.3d at 1227.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant Flores's motion to reconsider the Court's October 21, 2014 order.

**DATED: January 21, 2015**  **ENTERED**

_____
AMY J. STUEVE
U.S. District Court Judge

---

criminal case denied the defendant's suppression motion in part, and the Supreme Court later held that the government could argue that the denial of the suppression motion collaterally estopped the defendant from arguing at a later civil proceeding that the government violated his constitutional rights. *McCurry*, 449 U.S. at 91, 105. Here, the Court granted Flores's suppression motion, and narrowed the court's original ruling to exclude any determination of whether the law enforcement officers testified truthfully at Flores's suppression hearing.

[4] At the January 20, 2015 status hearing, Flores orally raised for the first time yet another argument, that she would be prejudiced if she were to testify at trial, and the government called Agent Desmond or Sergeant Karuntzos to rebut her testimony. The Court treats this argument as waived because Flores has failed to raise it in response to the government's initial motion to narrow, in her motion for reconsideration, or in her reply in support of the motion for reconsideration. Flores also does not articulate how this situation would cause her prejudice.