**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| ) | Case No. 13 CR 660 |
| v. ) | |
| ) | |
| ) | |
| ADRIANA GALLARDO and ) | |
| ANGEL AGUILAR ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendants Adriana Gallardo and Angel Aguilar are charged in a nine count indictment with a conspiracy to commit money laundering, money laundering, and structuring currency transactions. (R. 1, Indictment.) The indictment also contains a forfeiture allegation. In advance of trial, the government has filed various motions in limine. (R. 70.) For the reasons discussed below, the government's motions are granted in part and denied in part.

**BACKGROUND**

On August 15, 2013, a grand jury returned a nine count indictment against Defendant Adriana Gallardo ("Defendant" or "Gallardo") and her co-defendant Angel Aguilar. Count One charges both Defendants with a conspiracy to commit money laundering. Counts Two through Four charge Defendant Gallardo with money laundering offenses. Counts Five through Seven charge both Defendants with money laundering offenses. Counts Eight and Nine charge Defendant Gallardo with structuring currency transactions. (R. 1, Indictment.) The indictment also contains a forfeiture allegation.

## LEGAL STANDARD

Trial courts have broad discretion in ruling on evidentiary issues before trial. *See Jenkins v. Chrysler Motors Corp.,* 316 F.3d 663, 664 (7th Cir. 2002); *United States v. Lillie,* No. 08 CR 717, 2009 WL 3518157, at *1 (N.D. Ill. Oct. 28, 2009). "Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Accordingly, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). An *in limine* ruling avoids delays and allows the parties an opportunity to prepare themselves and witnesses for the introduction or exclusion of the evidence at issue. *See Wilson v. Williams,* 182 F.3d 562, 566 (7th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997) ("The prudent use of the *in limine* motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury."); *United States v. Connelly,* 874 F.2d 412, 416 (7th Cir. 1989). Ultimately, an *in limine* motion "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson,* 115 F.3d at 440.

A party seeking to exclude evidence has the burden of demonstrating that the evidence is inadmissible for any purpose. *United States v Brown,* No. 08 CR 1009, 2011 WL 43048, at *2 (N.D. Ill. Jan. 6, 2011). Regardless of a court's initial ruling on an *in limine* motion, the court may adjust its ruling during the course of the trial. *See Farfaras v. Citizens Bank & Tr. of Chicago,* 433 F.3d 558, 565 (7th Cir. 2006) (citing *Luce,* 469 U.S. at 41-42); *Perry*, 733 F.3d at

252 ("As a trial progresses, the presiding judge remains free to alter earlier rulings.") Furthermore, the court may defer ruling on a motion *in limine* until trial if the parties' arguments "cannot be evaluated accurately or sufficiently ... in such a procedural environment." *Jonasson*, 115 F.3d at 440.

## ANALYSIS

I.     **Motion to Admit Evidence Regarding Recorded Conversation**

The government moves in limine to admit a recorded conversation that took place on January 31, 2013 (the "January 2013 Conversation") between Gallardo and an undercover law enforcement officer. The government alleges that Gallardo laundered approximately $200,000 that the undercover officer and a confidential informant represented to be the proceeds of illegal drug activity, which they delivered to Gallardo at her currency exchange in two bundles on August 1, 2012 and September 21, 2012. The government contends that the January 2013 Conversation is relevant to the charged money laundering counts and thus the Court should admit it into evidence against Gallardo.[1] Specifically, the government argues that the majority of the January 2013 Conversation constitutes direct evidence of money laundering, and that the remainder of the conversation, which relates to Gallardo's request to purchase narcotics from the undercover officer, is admissible under Rule 404(b) to establish Gallardo's knowledge that the funds at issue were drug proceeds.

"Rule 404(b) prohibits evidence of a defendant's other crimes, wrongs, or acts as proof of his propensity to commit the charged offense, but allows such evidence for other purposes, including (but not limited to) motive, opportunity, intent, preparation, plan, knowledge, identity,

---

[1] Defendant Aguilar also objects to this motion on the basis that the proposed evidence will cause Aguilar prejudice through its "spill-over" effect. In response, the government represents that it will not use the January 2013 Conversation as evidence against Aguilar, and agrees that the Court can give the jury a limiting instruction to that effect. Accordingly, the Court only addresses the government's motion with respect to Defendant Gallardo.

absence of mistake, or lack of accident." *United States v. Lee*, 724 F.3d 968, 975 (7th Cir. 2013) (citing Fed. R. Evid. 404(b)). "Rule 404(b) is not just concerned with the ultimate conclusion, but also with the chain of reasoning that supports the non-propensity purpose for admitting the evidence." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (*en banc*) (citing *United States v. Reed*, 744 F.3d 519, 524-25 (7th Cir. 2014)). "In other words, the rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Gomez*, 763 F.3d at 856. "[T]he district court should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id.* Further, if the proponent of the evidence "can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great." *Id.* at 860. "The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Id.*

First, the government argues that the majority of the January 2013 Conversation is direct evidence of Gallardo's criminal conduct. "'Rule 404(b) is inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the crime charged.'" *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) (quoting *United States v. Lane*, 323 F.3d 568, 579 (7th Cir. 2003)). "Rule 404(b) is not concerned with direct evidence of a charged crime." *United States v. McKibbins*, 656 F.3d 707, 711 (7th Cir. 2011).

The government proffers the following with respect to the January 2013 Conversation. The undercover agent informed Gallardo that the confidential informant was "no longer in the

picture," and Gallardo responded by confirming the financial transactions that she performed for the confidential informant: "[b]ut I was gonna start telling [the confidential source], 'listen don't forget all of the money that I [unintelligible] to you, and all of the money that I'm sending to the accounts that you gave me.'" Gallardo also stated that she tried to reach the confidential source regarding the receipts of the transactions: "I tried calling him back … 'I tried calling you many times, and I asked you if I should throw away the receipts.'… And I told him, I said, 'you know what, I'm just gonna throw them away. I don't want to save stuff here, 'cause, shit if anything ever happens [unintelligible].'" Later in the conversation with the undercover agent, Gallardo stated that the confidential informant had told her that "next time" the confidential informant was not going to pay her, and was going to instead give her "work" to compensate her. The government anticipates offering evidence that "work" meant narcotics. Finally, the undercover agent told Gallardo that "in a couple of weeks I'm gonna have more money [to be laundered]…[i]t's gonna be awhile, 'cause I still got a lot of work [narcotics] out there, that's…the money is still there [tied up in the narcotics]." The undercover agent then said, "[h]owever you want payment, too. Don't matter to me … I'd rather have you deposit all the money and give you work [narcotics], because it's a lot easier for me." Gallardo responded by saying "okay." (R. 70, at 5-7.)

The Court agrees with the government that this portion of the January 2013 Conversation is direct evidence of the charged money laundering counts. First, Gallardo references sending money to the accounts given to her by the confidential informant, and throwing away receipts of the transactions. Both of these statements reference the charged transactions and thus are directly relevant to the charged counts. In response, Gallardo argues that "work" does not necessarily mean narcotics, and that she had a legitimate reason for stating that she was going to

5

throw away the receipts. These arguments, however, go to the weight of the evidence, not its admissibility. *See* Fed. R. Evid 401; 402. Defendant is free to make these arguments to the jury. In addition, Defendant's statement that she did not want to keep the receipts "if anything ever happens" is relevant to her knowledge and state of mind. Finally, Gallardo does not articulate how she will be unfairly prejudiced by this evidence, and the Court does not otherwise find that its probative value is substantially outweighed by the danger of unfair prejudice under Rule 403.

Second, in the proffered conversation Gallardo does not appear to be surprised by either the confidential informant's prior statement that he was planning to pay her with narcotics, or the undercover agent's request for her to launder additional drug proceeds. Gallardo's statements are relevant to show that she believed the funds that she is charged with laundering were the proceeds of illegal activity, which is an element of the charged crime. *See* 18 U.S.C. § 1956(a)(3) (the financial transaction must "involv[e] property represented to be the proceeds of specified unlawful activity"); *United States v. Barnes*, 230 F.3d 311, 314 (7th Cir. 2000) (holding that under § 1956(a)(3) the government must prove that the defendant believed the property at issue "to be the proceeds of specified unlawful activity such as dealing in narcotics…"); *United States v. Kaufmann*, 985 F.2d 884, 892 (7th Cir. 1993) (holding that under § 1956(a)(3) the government must prove "that an enforcement officer or authorized person made the defendant aware of circumstances from which a reasonable person would infer that the property was drug proceeds"); *United States v. Stratievsky*, 430 F.Supp.2d 819, 825 (N.D. Ill. 2006) (finding that under § 1956(a)(3), "[t]he Government must prove…that the [informant] made, and the [d]efendant[] believed, the predicate representation that the funds were proceeds of specified illegal activity.") Although Gallardo argues that her knowledge as of the date of the January 2013 Conversation does not bear on whether she believed the funds were drug proceeds

when she initially deposited them several months earlier, the Court disagrees. As the government notes, the way in which Gallardo "casually and freely talks about narcotics trafficking and her willingness to accept narcotics for money laundering" in the January 2013 Conversation is relevant to whether she believed that the funds she accepted in August and September of 2012 were drug proceeds at the time she accepted them. (R. 87, Gov. Reply, at 3-4.) She also specifically references the charged transaction during the conversation. Gallardo is free to argue that this conversation does not show that she believed in August and September of 2012 that those funds were drug proceeds, but that is a question for the jury. The Court also does not find that the probative value of this portion of the conversation is substantially outweighed by the danger of unfair prejudice under Rule 403 because these statements are direct evidence of an element of the offense, and Gallardo does not show that their introduction into evidence would unfairly prejudice her. *See United States v. Eads*, 729 F.3d 769, 777 (7th Cir. 2013) ("Because all probative evidence is to some extent prejudicial, we have consistently emphasized that Rule 403 balancing turns on whether the prejudice is *unfair*") (quoting *United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011)).

Next, the government proffers that in the final portion of the January 2013 Conversation, Gallardo asked the undercover agent if he could provide her with narcotics to sell, and they discussed the price, quality, and quantity of the drugs. The government argues that this exchange is also relevant to show Gallardo's belief that the funds the indictment charges Gallardo with laundering were illegal drug proceeds.[2] In response, Gallardo argues that the government is

---

[2] The government also argues that Gallardo's alleged request to the undercover officer for drugs "explains how Gallardo knew how to launder money in the first place…because she has familiarity with and knowledge of the drug world." (R. 70, Gov.'s Mot. at 11.) The Court finds that this theory relies on an improper propensity inference—namely, that because Gallardo has allegedly been involved in drug transactions she also knows how to launder money. *See Gomez*, 763 F.3d at 856 (holding that Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning.") Accordingly, the Court does not discuss it further.

attempting to introduce this portion of the conversation as improper propensity evidence. Gallardo also argues again that her knowledge as of the date of the January 2013 Conversation is not relevant to whether she believed that the funds were drug proceeds when she deposited them earlier in 2012.

The Court analyzes this "other act" evidence under Rule 404(b). Under *Gomez*, the Court first considers how this evidence might be relevant without relying on an improper propensity inference. *Gomez*, 763 F.3d at 856. As discussed, Gallardo's belief that the funds were the proceeds of illegal activity is an element of the charged crime. Gallardo's request to purchase narcotics from the undercover agent helps show the extent to which Gallardo believed that he was involved in narcotics trafficking. This fact is relevant, without relying on an improper propensity inference, to whether Gallardo believed that the original funds she is charged with laundering were the proceeds of illegal drug trafficking. Although Gallardo argues that the January 2013 Conversation took place several months after the alleged money laundering, Rule 404(b) "does not restrict the evidence concerning other acts to events which took place before the alleged crime." *United States v. Savage*, 505 F.3d 754, 761 (7th Cir. 2007) (quotation omitted). "The critical question is whether the evidence is sufficiently probative of a matter within the rule's purview. Depending upon the factual circumstances, the chronological relationship of the charged offense and the other act may well have some bearing on this inquiry, but it is not necessarily dispositive." *United States v. Anifowoshe*, 307 F.3d 643, 647 (7th Cir. 2002) (quoting *United States v. Betts*, 16 F.3d 748, 757 (7th Cir. 1994) (*abrogated on other grounds by United States v. Mills*, 122 F.3d 346 (7th Cir. 1997)). Here, for the same reasons discussed above, Gallardo's alleged request to purchase drugs from the undercover agent several

months after the conclusion of the charged money laundering conduct involving the same undercover agent is probative of Gallardo's belief as of the time of the charged conduct.

As *Gomez* instructs, however, the Court conducts a Rule 403 balancing analysis with respect to the proposed Rule 404(b) evidence. *Gomez*, 763 F.3d at 856-57 (citing Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice…")). "The more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (quoting *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008)). Rule 403 excludes "other-act evidence that may be slightly probative through a non-propensity theory but has a high likelihood of creating unfair prejudice by leading a jury to draw conclusions based on propensity." *United States v. Chapman*, 765 F.3d 720, 726 (7th Cir. 2014) (quoting *Gomez*, 763 F.3d. at 857). Given that the Court grants the government's motion to admit the other portions of the January 2013 Conversation, the incremental probative value of Gallardo's request is low. The jury will hear Gallardo state that the confidential source told her that "next time" he was going to pay her in "work" (i.e., narcotics), and the undercover officer tell Gallardo that he was going to have additional drug proceeds for her to launder, for which he would also like to pay her in narcotics. While Gallardo's request to the undercover officer to purchase narcotics is further evidence that she believed the undercover officer was involved in drug trafficking, and thus that she believed the original funds were drug proceeds, its marginal probative value is limited. The other evidence already shows that Gallardo believed the confidential source and the undercover officer were involved in selling drugs. Further, the risk of prejudice to Gallardo from evidence that she sought to purchase seven kilograms of illegal

9

drugs is very high. There is a significant danger that the jury will be more likely to convict Gallardo of the charged money laundering and structuring crimes because of evidence that she also sought to sell a large quantity of narcotics. Although the government states that the Court can give a limiting instruction to the jury, the Seventh Circuit recently found that a limiting instruction on its own does not necessarily eliminate a Rule 403 concern where the probative value of the evidence at issue is low and the "temptation to draw an impermissible propensity inference" from the evidence is great. *See United States v. Chapman*, 765 F.3d 720, 727 (7th Cir. 2014) (reversing and remanding for new trial where court gave limiting instruction but probative value of Rule 404(b) evidence was still substantially outweighed by the risk of unfair prejudice). Accordingly, the Court denies the government's motion to admit the portion of the January 2013 Conversation in which Gallardo allegedly requests to purchase drugs from the undercover officer.

For these reasons, the Court grants in part and denies in part the government's motion to admit the January 31, 2013 recorded conversation between Gallardo and the undercover agent.

## II. Motion to Preclude Evidence and Argument Designed to Elicit Jury Nullification

The government moves to preclude Defendant from arguing or presenting evidence designed to invite jury nullification. Specifically, the government seeks to preclude argument or evidence in the following areas: 1) prosecutorial charging decisions; 2) claims of "outrageous government conduct"; 3) allegations that the investigation or prosecution was racially motivated; and 4) the penalties Defendants face.

Jury nullification occurs when a jury ignores the evidence and the court's instructions on the law and acquits a criminal defendant whom the government has proven guilty beyond a reasonable doubt. *See United States v. McKnight*, 671 F.3d 664, 665 (7th Cir. 2012) (describing

evidence or argument that would be likely in the government's view to "incline the jury to acquit the defendant even if his guilt had been proved beyond a reasonable doubt" as "jury nullification"). The Seventh Circuit has recognized that jury nullification is "a legitimate concern of prosecutors because acquittals cannot be appealed." *Id.* "Neither the court nor counsel should encourage jurors to exercise [nullification] power" and the courts preclude counsel from any attempts to present evidence or argument of nullification. *United States v. Perez,* 86 F.3d 735, 736 (7th Cir. 1996).

### A. Prosecutorial Charging Decisions

The government moves to preclude Defendants from introducing evidence or argument regarding the government's intentions in prosecuting this case. Defendants do not object. The Court grants this aspect of the motion.

### B. Outrageous Government Conduct

The Seventh Circuit has made clear that "[o]utrageous government conduct is not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) (citing *United States v. White*, 519 F.3d 342, 346 (7th Cir. 2008)). The government seeks to preclude Defendants from making any such arguments at trial, including referencing Judge Grady's findings after the suppression hearing which the Court has already extensively addressed. Defendants do not object to this aspect of the motion. Defendant Gallardo also acknowledges the Court's prior rulings regarding the prior suppression hearing and represents that she will abide by them. Accordingly, this motion is granted.

### C. Allegations that Investigation or Prosecution Was Racially Motivated

The government requests that the Court preclude Defendants from arguing that the government was racially motivated in bringing this investigation or prosecution. This aspect of

the motion is granted without objection. *See United States v. Rainone,* No. 09 CR 206, 2013 WL 389004 at *1000 (N.D. Ill. Jan. 13, 2013) (precluding evidence regarding the government's motivation for prosecuting the case).

### D. References to Penalties or Impact on Defendant's Family

The government has moved in limine to preclude Defendants from introducing evidence or arguing to the jury the potential penalties they face if convicted. Defendants do not object to the motion. The Court therefore grants this motion in limine without objection. The Seventh Circuit has made clear that "the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored." *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). As noted by the Supreme Court, unless a jury has a role in sentencing, such as in capital sentencing proceedings, jurors should not consider a defendant's potential sentence when determining guilt or innocence. *Shannon v. United States,* 512 U.S. 573, 579, 114 S. Ct. 2419, 129 L. Ed. 2d 459 (1994) ("when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed") (citations and quotations omitted). Accordingly, Defendants may not mention the potential penalties they face because such penalties are irrelevant to the jury's determination of their guilt or innocence.

## III. Motion to Preclude Argument Regarding Missing Witnesses

The government next moves to preclude Defendants from making arguments about "missing witnesses." Defendant Gallardo has cross-moved for a missing witness instruction at trial. Such an instruction informs the jury that it may infer from a particular witness's absence that he would have given testimony harmful to the government. *United States v. Wright*, 722 F.3d 1064, 1068 (7th Cir. 2013).

The Seventh Circuit has made clear that a "missing witness instruction is disfavored in this circuit, but a district court has discretion to give it in unusual circumstances." *Id.* In order to obtain such an instruction, Defendant must establish the following: "(1) that if called, the witness would have been able to provide relevant, noncumulative testimony on an issue in the case; and (2) that the witness was peculiarly in the other party's power to produce." *Id.* at 1068-69 (quoting *United States v. Tavarez,* 626 F.3d 902, 904–05 (7th Cir.2010) (citations omitted)). In addition, the missing witness must have favorable testimony for Defendant. *See id.* at 1069 ("If no favorable testimony is out there, then a missing witness instruction serves no legitimate purpose.")

Defendant first seeks to argue that the confidential informant ("CI") is a missing witness. The parties do not dispute that the government filed criminal charges against the CI after he stole money in this case, he has been convicted and sentenced, and he is no longer cooperating with the government. Defendant nonetheless contends that he is "missing" because he "was a paid DEA informant for at least six years prior to him getting caught with his hand in the government's cookie jar." (R. 82, at 9.) The Court disagrees. "A witness is peculiarly within the government's power to produce when the witness is physically available only to the government, or where the witness's relationship with the government makes his testimony, in pragmatic terms, available only to the government." *United States v. Foster*, 701 F.3d 1142, 1155 (7th Cir. 2012) (citing *United States v. Christ,* 513 F.3d 762, 773 (7th Cir. 2008) (internal citation omitted)). "The mere fact that [a witness] was a government informant does not inevitably establish that he was pragmatically available to testify only on behalf of the prosecution." *Id.* (citing *United States v. Rollins,* 862 F.2d 1282, 1298 (7th Cir. 1988) (internal

13

citation omitted)).  Defendant's argument that the CI is missing because he previously served as a paid informant for the government fails under the clear law in this circuit.

Defendant next seeks a missing witness instruction regarding the two law enforcement officers who were the subject of the Court's October 21, 2014 ruling.  Specifically, on October 21, 2014, the Court granted the government's motion to narrow Judge Grady's May 14, 2014 oral ruling regarding Defendant's motion to suppress.  The Court narrowed Judge Grady's ruling to exclude any grounds for the suppression of evidence other than the ruling that Defendant invoked her right to counsel, and struck his credibility findings regarding Agent Desmond and Sergeant Karuntzos.  (R. 56.)  Defendant contends that the Court's ruling narrowing Judge Grady's suppression ruling is "an interest that makes" the law enforcement officers "peculiarly unavailable to the defendants."   (R. 56.)  Other than this broad conclusion, Defendant fails to explain how the ruling makes them unavailable to her.  Moreover, as the Court previously noted, Defendant cannot call either of these law enforcement officers as a witness at trial for the sole purpose of impeachment.  *See United States v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011) (quoting *United States v. Giles*, 246 F.3d 966, 974 (7th Cir. 2001)).  She has failed to identify any permissible, much less favorable, testimony they would provide at trial.  As such, the Court denies her motion for a missing witness instruction as to these witnesses.

Defendant further argues that a person named "Lupe" "may be missing from the trial." (R. 82 at 10.)  Defendant does not explain what favorable testimony Lupe would give or how Lupe is missing.  Defendant has therefore failed to meet her burden.

The Court grants the government's motion without prejudice and denies Defendant's motion without prejudice.  If the evidence at trial establishes the requisite elements for a missing witness instruction, Defendant is free to raise the issue with the Court again.

**IV.     Motion to Preclude Comments About Discovery in the Presence of the Jury**

The government moves the Court to preclude defense counsel from requesting discovery from witnesses or counsel, moving the Court for such discovery, or otherwise commenting on discovery matters in the presence of the jury. Defendants do not object to this aspect of the motion. Indeed, requesting discovery and commenting on discovery matters in the presence of the jury is inappropriate. *See, e.g., United States v. Brown,* No. 08 CR 1009, 2011 WL 43038, at *15 (N.D. Ill. Jan. 6, 2011); *United States v. Azteca Supply Co.,* No. 10 CR 80, 2010 WL 4962828, at *9 (N.D. Ill. Dec. 1, 2010). The Court, therefore, grants the government's motion without objection. Neither side may make such comments or arguments in front of the jury. The parties should raise any discovery matters with the Court outside the presence of the jury.

**V.     Motion to Admit Summary Chart Evidence of Voluminous Records under Federal Rule of Evidence 1006**

The government has also moved the Court to admit its summary charts which summarize voluminous telephone and bank account records. Defendant Gallardo objects on the grounds that the charts are not complete. Because the government has not finalized the charts yet, the Court denies the motion as premature without prejudice. The government should bring the summary charts to the final pretrial conference. Defendant is free to raise her objections at that time.

The Seventh Circuit has provided specific guidance on the two ways a party can summarize voluminous documents at trial. Specifically, in *United States v. White,* 737 F.3d 1121, 1135-36 (7th Cir. 2013) *cert. denied sub nom. Helton v. United States*, 134 S. Ct. 2717, 189 L. Ed. 2d 754 (2014), the Seventh Circuit explained:

> First, a party can introduce the information in a summary exhibit under Federal Rule of Evidence 1006, in order to "to prove the content of voluminous writings ... that cannot be conveniently examined in court." If admitted this way, the summary itself is substantive evidence—in part because the party is not obligated to introduce the underlying documents themselves. *See [United States v.] Janati,* 374 F.3d 263, 273[(4th Cir. 2004];

15

> Fed.R.Evid. 1006 (only requiring that the underlying evidence be "available for examination or copying, or both, by other parties at a reasonable time and place," or be subject to production in court upon order). Because a Rule 1006 exhibit is supposed to substitute for the voluminous documents themselves, however, the exhibit must accurately summarize those documents. It must not misrepresent their contents or make arguments about the inferences the jury should draw from them. *See [United States v.] Milkiewicz,* 470 F.3d 390, 396 (1st Cir. 2006)] ("The proponent must show that the voluminous source materials are what the proponent claims them to be and that the summary accurately summarizes the source materials.").
>
> The other option is a pedagogical chart admitted pursuant to the court's "control over the mode ... [of] presenting evidence" under Federal Rule of Evidence 611(a). Rule 611(a) pedagogical summaries are meant to facilitate the presentation of evidence already in the record. These summaries are not substantive evidence—instead, the summaries are meant to aid the jury in its understanding of evidence that has already been admitted. *Janati,* 374 F.3d at 273. For this reason, Rule 611(a) charts can be more one-sided in their presentation of the relevant information. For instance, such exhibits may "include witnesses' conclusions or opinions," or "reveal inferences drawn in a way that would assist the jury." *Id.* Of course, admitting such pedagogical devices is within the district court's discretion. And when the district court does admit a summary on the basis, it should instruct the jury that such summaries are not evidence and are meant only to aid the jury in its evaluation of other evidence. *Id.*
>
> We agree with the First Circuit that [t]he lines between these two types of summary documents are easily blurred. A summary that is admissible under Rule 1006 ... could properly be offered under Rule 611(a) if the supporting material has been admitted into evidence. Likewise, a chart that originally was offered as a jury aid to assist with review of voluminous underlying documents already in evidence—and which accurately summarizes those documents—alternatively could be admitted under Rule 1006 if the court concluded that the supporting documents could not be examined conveniently in court. *Milkiewicz,* 470 F.3d at 397.

*White*, 737 F.3d at 1135-36.

The government has represented that it intends to offer the summary charts pursuant to Rule 1006. *See generally United States v. Isaacs*, 593 F.3d 517, 527 (7th Cir. 2010). The Court will address their admissibility once it has the benefit of the charts.

## CONCLUSION

For the foregoing reasons, the government's motions in limine are granted in part and denied in part.

**DATED: February 25, 2015**  **ENTERED**

_____
AMY J. ST. EVE
U.S. District Court Judge